UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RENÉ PAIGE                                    CIVIL ACTION

VERSUS                                        NO. 16-17785

PELLERIN MILNOR CORPORATION                   MAGISTRATE JUDGE
                                              JOSEPH C. WILKINSON, JR.


**ORDER AND REASONS ON MOTION**

Plaintiff, René Paige ("Paige"), alleges that his former employer, Pellerin Milnor

Corporation ("Milnor"), failed to accommodate his disability and discriminated and

retaliated against him based on  that disability by terminating his employment, all in

violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.  He

also alleges interference with and retaliation for pursuing his rights under the Employee

Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140.[1]  Complaint, Record Doc.

No. 1.  This matter was referred to a United States Magistrate Judge for all proceedings

and entry of judgment in accordance with 28 U.S.C. § 636(c) upon written consent of all

parties.  Record Doc. No. 16.

Milnor filed a timely motion for summary judgment, supported by an affidavit,

verified documents and deposition excerpts.  Record Doc. No. 31.  The motion seeks

dismissal of all of plaintiff's remaining claims on several grounds**.**  Paige filed a timely

---

[1] The court previously dismissed  plaintiff's Title VII retaliation claims. Record Doc. No. 24.

memorandum in opposition, Record Doc. No. 34, with supporting exhibits, including photographs and verified documents pertaining to his foot condition. Plaintiff's Exhibits, Record Doc. Nos. 34-3-5. Plaintiff asserts that genuine issues of material fact exist as to each of his claims. Record Doc. No. 34 at p. 1.

Having considered the complaint, the record, the arguments of the parties and the applicable law, IT IS ORDERED that defendant's motion for summary judgment is GRANTED for the following reasons.

## I.   THE UNDISPUTED FACTS

The following material facts are accepted as undisputed solely for purposes of the pending motion for summary judgment. Plaintiff admitted the majority of defendant's statement of undisputed material facts, Record Doc. No. 31-2, in his statement of undisputed and disputed material facts, Record Doc. No. 34-1.

Paige began work at Milnor as a temporary employee in the position of "Assembler I" in February 2012. Plaintiff's statement of undisputed and disputed material facts, Record Doc. No. 34-1at ¶ 1. He was promoted to "Assembler II" and became a full-time Milnor employee in August 2013. Id. at ¶ 2. In that position, Paige assembled harnesses for industrial dryers manufactured at Milnor's plant. Id. at ¶ 3. He worked ten-hours shifts four days a week. Id. at ¶ 4. The job involved heavy physical labor, including climbing four flights of stairs eight to ten times a day, standing and walking for approximately 80% of his ten-hour shift, stretching wires, hammering,

stooping, kneeling, crouching and other physical labor that was taxing on his hands, feet and body.  Id. at ¶¶ 5 & 35.

On January 8, 2015, Paige emailed his supervisor in the morning saying that he was ill and unable to attend work, but Paige traveled to Alabama later the same day.  Id. at ¶¶ 6-7; Record Doc. No. 34-2 at p.50.  Paige received a counseling and final warning letter regarding his repeated failure to provide required documentation about his anticipated absences, particularly for doctors' visits, on June 1, 2015.  Defendant's MSJ Exhibit C, Record Doc. No. 31-3 at p.141.  The next day, June 2, 2015, Milnor's employee relations manager, Steven Harris, discussed the warning letter with Paige and provided him with copies of Milnor's attendance policies and a supervisor guidance memorandum.  Id. at p. 143 (Defendant's MSJ Exhibit D).

Before August 2015, Paige was diagnosed with post-traumatic stress disorder, tinnitus, right ankle problems, and arthritis in his hands and feet.  Record Doc. No. 34-1 at ¶ 54.  In late July/early August 2015, Paige claimed to experience debilitating pain in his right foot.  Id. at ¶ 8.  He reported to work on August 4, 2015, with a doctor's note from the day before, August 3, 2015, indicating he could work "light duty" if he "[a]void[ed] extended standing/walking."  Id. at ¶ 9; Defendant's MSJ Exhibit E, Record Doc. No. 31-3 at p.145.  Paige was asked to provide a more detailed description of his physical restrictions so a determination could be made by Milnor as to whether those restrictions could be accommodated.  Defendant's MSJ Exhibit F, Record Doc. No. 31-3

at p. 146.

Plaintiff submitted a doctor's note to Milnor on August 6, 2015, indicating that his weight-bearing time was restricted to "2 hours with 20 minute rest in between each weight bearing task" and that he could not return to work until August 18, 2015. Record Doc. No. 34-1 at ¶¶ 12-13. Paige then applied for and was placed on short-term disability status and began receiving short-term disability benefits. Id. at ¶ 14. He understood that the benefits ensured he was paid while he was unable to work. Id. at ¶ 15. Paige returned his short-term disability paperwork to Milnor on August 17, 2015, and attached a doctor's note indicating he was capable of performing "clerical/administrative" work but could not resume work until an MRI was performed. Id. at ¶ 16.

Plaintiff testified that he was only able to stand for approximately five to ten minutes, from August 2015 to October 2015, with the aid of a corrective boot specifically molded to fit his foot, id. at ¶ 49, and that he was able to stand for 25 to 30 minutes by December 2015, id. at ¶ 50. During plaintiff's leave in October 2015, while Milnor was conducting surveillance on one of plaintiff's co-workers, plaintiff was observed wearing dress shoes. Id. at ¶ 42. While under surveillance, plaintiff also engaged in numerous activities that he had claimed he could not perform due to his foot condition, including but not limited to driving, standing, walking, exercising several times on a stationary bike at a fitness facility and performing physical labor, all without wearing his special foam

4

boot or any other visible brace or aid.  Id. at ¶ 43.  On September 16, 2015, Paige

informed Milnor that his MRI showed bone spurs, severe arthritis and a contusion.  Id.

at ¶ 17; Defendant's MSJ Exhibit L, Record Doc. No. 31-3 at p. 159.  Paige followed up

eight days later with a medical note from the Department of Veterans Affairs indicating

that he was unable to return to work until October 30, 2015.  Record Doc. No. 34-1 at ¶

18.

A note from Paige's October 20, 2015, visit to the South Louisiana Veterans

Health Care System indicated he would not be able to return to work until he was

released from his doctor's medical care and that he would be reevaluated on November

23, 2015.  Id. at ¶ 19.  Steven Harris took note of Paige's report, on November 23, 2015,

that he wore his corrective boot all day and could not stand for an hour without extreme

discomfort and foot swelling.  Defendant's MSJ Exhibit P, Record Doc. No 31-3 at

p.163.

On November 27, 2015, Milnor received a letter from the Department of Veterans

Affairs stating that plaintiff had filed a claim with the Department for "unemployability

benefits," which are long-term disability benefits, indicating "the reason he is

unemployable is because of his service connected disabilities, which include medical

conditions relating to his knee, hypertension, right foot and Post Traumatic Stress

Disorder."  Record Doc. No. 34-1 at ¶ 21; Defendant's MSJ Exhibit Q, Record Doc.

No. 31-3 at p. 164.  Paige advised Milnor's Benefits Coordinator, Sue Pellegrine, on

December 2, 2015, that his next appointment at the Department of Veterans Affairs podiatry clinic was scheduled for January 26, 2016. Record Doc. No. 34-1 at ¶ 22. Pellegrine noted that she asked plaintiff for assistance in providing Milnor with updated information regarding his limitations and restrictions. Id. at ¶ 23. Paige offered to get that information from his doctor, but Milnor had to make the same request again on December 14, 2015. Id. at ¶ 25.

Plaintiff signed a certification on December 17, 2015, indicating he had requested short-term disability leave from Milnor beginning on August 5, 2015, due to his foot condition. Id. at ¶ 26-27. Plaintiff did not request an accommodation because no light-duty version of the assembler job existed. Id. at ¶ 59. He was unaware of and did not ask whether any clerical or administrative jobs were available at Milnor between August 2015 and January 2016. Id. at ¶ 60. There were only four to five clerical/administrative jobs at Milnor during that period, all of which were filled. Id. at ¶ 61. Milnor would have had to create a new position to accommodate Paige, if he had requested an accommodation. Id. at ¶ 62.

Paige was notified by Milnor of his termination based upon his dishonesty and falsifying official documents/records, via letter on January 11, 2016. Id. at ¶ 44. Milnor informed Paige that it made the termination decision based on the discrepancies observed between the activities Paige performed while under surveillance and the activities he alleged he was physically unable to perform. Id. Paige asserts that he could perform the

activities observed while under surveillance temporarily after he obtained inserts for his shoes in November 2015. Id. at ¶ 45. Plaintiff did not inform Milnor of any changes in his ability to walk or stand on a limited basis between the time he certified his limitations to Milnor in November/December 2015 and when he was terminated. Id. at ¶ 46. In late January 2016, Paige's doctor informed him that his condition is permanent and that he would never be able to perform the job of an assembler. Id. at ¶ 48 & 57.

Plaintiff had no intention of seeking long-term disability benefits from Milnor at the time of his termination because he was not yet aware that his foot condition was permanent. Id. at ¶ 74. Plaintiff never discussed applying for long-term disability with Milnor because he was unaware of its availability, and he did not know that his receipt of short-term disability benefits was time-limited. Id. at ¶ 77.

Plaintiff does not dispute that he actually performed the activities identified in the termination letter and observed while he was under surveillance. Id. at ¶ 64. Paige admitted he does not know whether any additional reason exists for his termination, Paige; he merely disagrees with the manner in which he was terminated. Id. at ¶ 66. He believes Milnor should have discussed its surveillance observations with him; that he should have received special consideration as a veteran; and that Milnor should have terminated him in person. Id. at ¶ 67-68. Paige made no complaints to Milnor regarding alleged discrimination before his termination in January 2016. Id. at ¶ 73.

On January 19, 2016, Paige filed an EEOC Charge of Discrimination against

Milnor, describing the type of discrimination as "other."  Id. at ¶ 79.  He amended his charge on February 4, 2016, to indicate the alleged discrimination was based on "disability."  Id. at ¶ 81.  Paige submitted a handwritten note to the EEOC on September 22, 2016, stating that his termination was the product of retaliation and discrimination based on his veteran status and race.[2]  Id. at ¶ 70.

II.   ANALYSIS

A.   Standards of Review

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Rule 56, as revised effective December 1, 2010, establishes new procedures for supporting factual positions:

> (1)  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>     (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>     (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

---

[2] Plaintiff's complaint, Record Doc. No. 1, does not allege discrimination based on either his age or his race.

(2)  Objection That a Fact Is Not Supported by Admissible Evidence.  A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
(3)  Materials Not Cited.  The court need consider only the cited materials, but it may consider other materials in the record.
(4)  Affidavits or Declarations.  An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

Thus, the moving party bears the initial burden of identifying those materials in the record that it believes demonstrate the absence of a genuinely disputed material fact, but it is not required to negate elements of the nonmoving party's case.  Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "[A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to [a particular material] fact."  Advisory Committee Notes, at 261.

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  No genuine dispute of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented.  Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the

burden of proof at trial must cite to particular evidence in the record to support the essential elements of its claim. Id. (citing Celotex, 477 U.S. at 321-23); accord U.S. ex rel. Patton v. Shaw Servs., L.L.C., 418 F. App'x 366, 371 (5th Cir. 2011). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." Celotex, 477 U.S. at 323; accord U.S. ex rel. Patton, 418 F. App'x at 371.

"Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists." Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998); accord Murray v. Earle, 405 F.3d 278, 284 (5th Cir. 2005). "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted) (emphasis in original). "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'" Nat'l Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson, 477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the

nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation

omitted) (emphasis in original); accord Duron v. Albertson's LLC, 560 F.3d 288, 291

(5th Cir. 2009).

Under Fed. R. Civ. P. 56(c)(1)(A), evidence submitted at the summary judgment

stage must be admissible as presented or the proponent must show that it will be

presented in an admissible form as proceedings continue.

> Although the substance or content of the evidence submitted to
> support or dispute a fact on summary judgment must be admissible . . . , the
> material may be presented in a form that would not, in itself, be admissible
> at trial.
> [T]he rule expressly contemplates that affidavits are only one way
> to "support" a fact; "documents . . . declarations, [and] other materials" are
> also supportive of facts. Fed. R. Civ. P. 56(c)(1)(A). To avoid the use of
> materials that lack authenticity or violate other evidentiary rules, the new
> rule allows a party to object "that the material cited to support or dispute
> a fact cannot be presented in a form that would be admissible as evidence."
> Fed. R. Civ. P. 56(c)(2); see also advisory committee's note to 2010
> amendment ("The objection functions much as an objection at trial,
> adjusted for the pretrial setting. The burden is on the proponent to show
> that the material is admissible as presented or to explain the admissible
> form that is anticipated.").

Lee v. Offshore Logistical & Transp., L.L.C., 859 F.3d 353, 354-55 (5th Cir. 2017)

(internal citations and quotations omitted); accord Maurer v. Indep. Town, No. 16-30673,

2017 WL 3866561, at *2-3 (5th Cir. Sept. 5, 2017) ("At the summary judgment stage,

evidence need not be authenticated or otherwise presented in an admissible form.").

B.    Plaintiff's Americans with Disabilities Act Claims

Paige claims Milnor terminated him based on his disability, after failing to provide

him with a reasonable accommodation, and retaliated against him for seeking short-term disability benefits, all in violation of the Americans with Disabilities Act. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual <u>on the basis of disability</u> . . . ." 42 U.S.C. § 12112(a) (emphasis added).

Under the ADA, a disability is defined "in relevant part as 'a physical or mental impairment that substantially limits one or more major life activities of such individual.' An impairment is substantial if it 'substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population.'" <u>Lanier v. Univ. of Tex. Sw. Med. Ctr.</u>, 527 F. App'x 312, 318 (5th Cir. 2013) (quoting 42 U.S.C. § 12102(1)(A); 29 U.S.C. § 705(20)(B); 29 C.F.R. § 1630.2(j)(1)(ii)). "Major life activities include 'caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.'" <u>Kemp v. Holder</u>, 610 F.3d 231, 234-35 (5th Cir. 2010) (quoting 42 U.S.C. § 12102(2)(A)). "[A]n employer having granted the employee's request for . . . short term disability leave [does] not demonstrate by itself that the employer regarded the employee as disabled." <u>Tabatchnik v. Continental Airlines</u>, No. 07-20067, 2008 WL 248595, at *2 (5th Cir. Jan. 30, 2008) (citing <u>Bennett v. Calabrian Chems. Corp.</u>, No. 04-41056, 2005 WL 643278, at *1 (5th Cir. Mar. 21, 2005)). "A plaintiff can establish that he is 'qualified' by showing that 'either (1) [he] could perform the essential functions of the job in spite of [his] disability,'

12

or '(2) that a reasonable accommodation of [his] disability would have enabled [him] to perform the essential functions of the job.'" Moss v. Harris Cty. Constable Precinct One, 851 F.3d 413, 417 (5th Cir. 2017) (quoting E.E.O.C. v. LHC Group, Inc., 773 F.3d 688, 697 (5th Cir. 2014)).

When a plaintiff asserts discrimination or retaliation under the ADA, the court applies a version of the burden-shifting framework established by the United States Supreme Court for Title VII claims in McDonnell Douglas Corp. v Green, 411 U.S. 792 (1973). As to plaintiff's ADA discrimination claims, the Fifth Circuit first requires plaintiff to establish a prima facie case of discrimination by proving: "'(1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability.'" LHC Group, Inc., 773 F.3d at 697 (quoting Zenor v. El Paso Healthcare Sys., Ltd., 176 F.3d 847, 853 (5th Cir. 1999)) (brackets in original) (emphasis added). Termination is an adverse employment action. Paul v. Elayn Hunt Corr. Ctr., 666 F. App'x 342, 346 (5th Cir. 2016) (citing Wheat v. Fl. Par. Juvenile Justice Comm'n, 811 F.3d 702, 710 (5th Cir. 2016)).

To have an actionable claim, however, plaintiff must show that his termination was caused by disability discrimination. LHC Group, Inc., 773 F.3d at 695 (quoting Zenor, 176 F.3d at 853)). Discrimination based on disability

> includes failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the

13

accommodation would impose an undue hardship [on the operation of its business]." 42 U.S.C. § 12112(b)(5)(A). Thus, a plaintiff must prove the following statutory elements to prevail in a failure-to-accommodate claim: (1) the plaintiff is a "qualified individual with a disability;" (2) the disability and its consequential limitations were "known" by the covered employer; and (3) the employer failed to make "reasonable accommodations" for such known limitations.

Feist v. La. Dep't of Justice, 730 F.3d 450, 452 (5th Cir. 2013).

As to plaintiff's ADA retaliation claim, Paige must establish a prima facie case "by showing that (1) he engaged in an activity protected by the ADA, (2) he suffered an adverse employment action, and (3) there is a causal connection between the protected act and the adverse action." Weed v. Sidewinder Drilling, Inc., No. H-14-1658, 2017 WL 1164294, at *8 (S.D. Tex. Mar. 29, 2017) (internal citations omitted) (emphasis added); accord DeBlanc v. St. Tammany Par. Sch. Bd., 640 F. App'x 308, 312 (5th Cir. 2016) (quoting Seaman v. CSPH, Inc., 179 F.3d 297, 301 (5th Cir. 1999)).

An individual engages in a protected activity when he or she "oppose[s] any act or practice made unlawful by this chapter or . . . ma[kes] a charge, testife[s], assist[s], or participate[s] in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). "To demonstrate a causal connection [between the protected activity and the adverse action], a plaintiff may show close 'timing between an employee's protected activity and an adverse action against him.'" Molden v. East Baton Rouge Par. Sch. Bd., No. 17-30344, 2017 WL 4479426, at *7 (5th Cir. Oct. 6, 2017) (quoting Feist, 730 F.3d at 454). However, "[s]uch temporal proximity must generally

be 'very close.'" Feist, 730 F.3d at 454 (quoting Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (emphasis added)).  The Fifth Circuit has found that a four month lapse may be sufficiently close, but that a five month lapse is not enough without other evidence of retaliation.  Feist, 730 F.3d at 454-55 (citing Evans v. Houston, 246 F.3d 344, 354 (5th Cir. 2001); Raggs v. Miss. Power & Light Co., 278 F.3d 463, 472 (5th Cir. 2002)).

Under the McDonnell Douglas burden-shifting framework, if plaintiff establishes a prima facie case of discrimination or retaliation,

> the burden then shifts to the defendant-employer to articulate a legitimate, non-discriminatory [or non-retaliatory] reason for the adverse employment action.  Once the employer articulates such a reason, the burden then shifts back upon the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination [or retaliation].

Sapp v. Donohoe, 539 F. App'x 590, 595 (5th Cir. 2013) (quoting McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007); McInnis v. Alamo Cmty. Coll. Dist., 207 F.3d 276, 280 (5th Cir. 2000)).  Defendant's burden to articulate a legitimate, non-discriminatory reason "is a burden of production, not persuasion, and it involves no credibility assessments."  Kelly v. Costco Wholesale Corp., 632 F. App'x 779, 782 (5th Cir. 2015) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000)).  Defendant's adverse employment action does not need to be a proper one, but it must be a legitimate, non-discriminatory one for defendant to satisfy its burden.  Clark v. Boyd

Tunica, Inc., 665 F. App'x 367, 372 (5th Cir. 2016) (citing Bryant v. Compass Grp. USA Inc., 413 F.3d 471, 478 (5th Cir. 2005) ("Management does not have to make proper decisions, only non-discriminatory ones.")).

Even assuming, without deciding, that plaintiff has produced sufficient evidence to create a triable issue as to whether his foot condition rendered him disabled and that he was a qualified individual under the ADA, I find that defendant has sustained its burden to produce a legitimate, non-discriminatory reason for its termination of plaintiff, and plaintiff has failed to present evidence sufficient to show that defendant's proffered reason was pretextual.

As a preliminary evidentiary matter, I reject plaintiff's arguments that defendant's summary judgment exhibits B, C, F, P, U and V are inadmissible hearsay. Fed. R. Evid. 803(6) provides an exception to the rule against hearsay for records of a regularly conducted activity, and exhibits B, C, F, P, and V are admissible under this exception. Exhibit U is an affidavit that may permissibly be considered under Fed. R. Civ. P. 56(c)(4).

Exhibit B contains an email note by Jay Morales, Paige's supervisor, concerning a discussion he had with Paige about honesty and absences. Plaintiff's MSJ Exhibit B, Record Doc. No. 31-3 at p. 140. Exhibit B is a record of regularly conducted Milnor business and related human resources activities, because it was written to be included in Paige's employment record. The letter in Exhibit C that Danny Randolph, defendant's

department manager, sent to Paige on June 1, 2015 is also admissible as a record of a regularly conducted activity. Plaintiff's MSJ Exhibit C, Record Doc. No. 31-3 at p. 141. This letter does not lack foundation because Randolph prepared it and has personal knowledge of Paige's absences record. Fed. R. Evid. 602; Record Doc. No. 31-3 at p. 34. The email from Steve Harris, the employee relations director, to Sid Lacoste, Milnor's human resources director, regarding a meeting with Paige also fits Rule 803(6)'s business records exception. Plaintiff's MSJ Exhibit C, Record Doc. No. 31-3 at p. 142. Exhibits F and P include notes written to Paige from defendant's employee relations manager, Steven Harris, regarding Paige's medical restrictions. Defendant's MSJ Exhibit F, Record Doc. 31-3 at p. 146; Defendant's MSJ Exhibit P, Record Doc. No. 31-3 at p. 163. Exhibit V is a detailed investigative report of surveillance conducted and prepared by Foresight, LLC and provided to defendant in the course of both entities' regularly conducted business, as stated in the affidavit of human resources director Lacoste, which is defendant's exhibit U. Record Doc. No. 31-3 at pp. 174-190.

As to Exhibit U, Fed. R. Civ. P. 56(c)(4) states that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." In his affidavit, Lacoste outlines the activities Paige was observed performing while under surveillance and contrasts them with Milnor's understanding of Paige's physical limitations. Lacoste also details Milnor's decision-

17

making process as it pertained to Paige's termination. As the human resources director at Milnor at the time of Paige's employment there, Lacoste is competent to testify on these matters and as to Milnor's understanding of Paige's medical condition and why defendant terminated plaintiff at the time it did**.**

Milnor argues that it has articulated a legitimate, non-discriminatory reason for plaintiff's termination; specifically, that plaintiff was dishonest and misrepresented to Milnor his inability to work based on alleged physical limitations that were contradicted by what was observed during the surveillance investigation. Record Doc. No. 31-1 at p. 21. Milnor can satisfy its burden to provide a legitimate, non-discriminatory reason for plaintiff's termination by producing an explanation which, "if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." St. Mary's Honor Cen. v. Hicks, 113 S. Ct. 2742, 2747 (1993).

In his declaration, human resources director Lacoste states that Paige was surveilled beginning in October 2016 and continuing through early January 2016. Defendant's MSJ Exhibit U, Record Doc. No. 31-3 at p. 172. Detailed written surveillance reports were prepared and provided to Lacoste. The surveillance observations showed Paige "performing numerous activities that he claimed he could not perform due to his foot condition, including, but not limited to, driving, standing, walking, exercising on a stationary bike and performing physical labor, all without wearing any special foam boot or any other visible brace or aid." Id. Lacoste states that

Paige was terminated for "dishonesty and for falsifying official documents/records" and that "Paige did not request any type of reasonable accommodation relating to either performing the Assembler job or to obtaining some other type of job at Milnor" before his termination. Id. Lacoste states that even if Paige had requested a reasonable accommodation in the form of a clerical/administrative position, none was then available and Milnor would have had to create a new, unnecessary position to accommodate his request. Id. at p. 173.

Foresight LLC's investigative summaries from three separate surveillance reports are the basis for Lacoste's statements concerning Paige's physical capabilities. During surveillance, Paige was observed driving, walking, exercising on several occasions on a stationary bike for 20 minutes and more without stopping, performing physical work for another company, and wearing shoes without a brace or aid. Defendant's MSJ Exhibit V, Record Doc. No. 31-3 at pp. 175-190. Plaintiff was videoed cutting/drilling into a porch while wearing suede tactical boots without a brace or aid on November 25, 2015. Id. at p. 183. On that same day, he was also observed wiping down his work vehicle, unloading a ladder from the vehicle with another person, and carrying what appeared to be two tool bags and other work-related items to and from his vehicle. Id. at pp. 184-85. Between December 29, 2016 and January 2, 2016, Paige was videoed running errands and working out at the French Riviera Fitness Center. Id. at 187. He wore a sweat suit and tennis shoes during his approximately 40 minute workout on a

stationary bicycle on December 31, 2016 and again during his approximately 20 minute stationary bike workout on January 2, 2016.  Id.

Plaintiff does not dispute that he was able to perform these various physical activities, which he previously indicated to Milnor he could not perform due to his foot condition.  Plaintiff's deposition, Record Doc. No. 31-3 at pp.120-21.  He also admitted that he believes he was terminated due to Milnor's observations during its surveillance of him.  Id. at 126.  Plaintiff asserts that he could not perform the essential functions of the assembler job from August 2015 to January 2016 because he could only stand and walk for up to thirty minutes while wearing his corrective boot, and he could only perform weight-bearing activities for two hours before resting for 20 minutes between tasks.  Record Doc. No. 34-1 at ¶¶ 12, 49, 50.  Paige's explanation for this discrepancy is that shoe inserts provided him temporary relief, allowing him to perform the physical activities he did while under surveillance.  Record Doc. No. 31-3 at p. 121.

Milnor has satisfied its burden by producing competent summary judgment evidence that it terminated Paige because it believed, based on knowledge of plaintiff's performance of observed tasks and physical activities outside of work that he claimed he could not perform in his job as an assembler, that plaintiff had misrepresented the severity and disabling effect of his alleged medical condition.  Thus, the burden shifts back to Paige to produce evidence to establish a triable material fact issue that Milnor's given reason for his termination was pretextual.

Paige originally asserted in his complaint that Milnor's only reason for terminating him was his disability. Record Doc. No. 1 at ¶¶ 31-32. In his opposition memorandum, Paige argues that Milnor's proffered reason for terminating him, dishonesty in misrepresenting and falsifying official documents, was pretextual. Record Doc. No. 34 at p. 16. However, "the final burden rests with [the plaintiff] to point to evidence showing 'that the legitimate reasons offered by the defendant[] were not [its] true reasons, but were a pretext for discrimination.'" Ripoll v. Dobard, 618 F. App'x 188, 191 (5th Cir. 2015) (citing Jackson v. Cal-W. Packaging Corp., 602 F.3d 374, 378 n.12 (5th Cir. 2010) (quoting Reeves, 530 U.S. at 143)) (emphasis added).

While plaintiff argues that Milnor's proffered reason for his termination is mere pretext, he provides no evidence to create a material fact issue that he was discriminated against based on his alleged disability. Plaintiff does not dispute that he actually performed the physical activities, without any corrective footwear, observed during his surveillance. Plaintiff admitted in his own deposition testimony that Milnor's proffered reason for his termination, dishonesty in falsifying documents and misrepresenting his physical condition, was the stated reason for his termination and that he has no knowledge or evidence to the contrary. Plaintiff's MSJ Exhibit A, Record Doc. No. 34-2 at p. 116. Paige has produced only conclusory and speculative statements that Milnor terminated him so that it could stop paying him short-term disability benefits. Record Doc. No. 34 at p. 24. However, conclusory statements by the nonmoving party are

insufficient to defeat a motion for summary judgment. Chambers v. Sears Roebuck & Co., 428 F. App'x 400, 419 n.54 (5th Cir. 2011) (citing Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l, 343 F.3d 401, 405 (5th Cir. 2003)).

On this record, plaintiff has failed to sustain his burden to produce evidence sufficient to show that defendant's legitimate, non-discriminatory reason for his termination was a pretext for disability discrimination.

Paige also argues that Milnor violated the ADA by failing to make reasonable accommodations for him despite his alleged status as a qualified individual with a disability. Even assuming, without deciding, that Paige had produced evidence sufficient to show that he was a qualified individual with a disability and that the disability and its consequential limitations were known to Milnor, "[t]he plaintiff bears the initial burden of proof on the issue of reasonableness" because reasonable accommodation is an element of plaintiff's prima facie case of discrimination under the ADA. Windhauser v. Bd. of Supervisors, 360 F. App'x 562, 567 (5th Cir. 2010) (citing Riel v. Elec. Data Sys. Corp., 99 F.3d 678, 683 (5th Cir. 1996)).

Milnor argues that plaintiff never requested an accommodation and that " no light duty version of the Assembler job existed, no other light duty work was available and plaintiff was never released to any type of work at any time prior to his termination." Record Doc. No. 31-1 at p. 9. It is undisputed that Paige did not request a reasonable accommodation. Record Doc. No. 34-1 at ¶ 59. Plaintiff concedes in his opposition

memorandum, and admitted in his deposition testimony, that he did not know what type of reasonable accommodation would have allowed him to do his job as an assembler at Milnor, and that he could not identify any administrative job or position that would have been available at the time of his termination as a reasonable accommodation. Record Doc. Nos. 34 at p. 8; and 34-2 at p. 125.

> The ADA requires an employer to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . ." 42 U.S.C. § 12112(b)(5)(A). "An employee who needs an accommodation . . . has the responsibility of informing [his] employer." Special words, like "reasonable accommodation," need not be uttered, but the employee "must explain that the [proposed] adjustment in working conditions . . . is for a medical condition-related reason . . . ." Once an accommodation is requested, an employer must engage in the "interactive process," or a flexible dialogue, with the employee with the goal of finding an appropriate accommodation for the limitation. An employer that fails to engage in the interactive process in good faith violates the ADA. Where the breakdown "is traceable to the employee," though, there is no violation.

Delaval v. PTech Drilling Tubulars, L.L.C., 824 F.3d 476, 481 (5th Cir. 2016) (internal citations omitted). When plaintiff did not request an accommodation there was a breakdown in the "interactive process" traceable to the employee, Paige. As a result, there was no ADA violation by the employer, Milnor.

For all of the foregoing reasons, defendant is entitled to summary judgment on plaintiff's disability discrimination, failure to accommodate and retaliation claims under the American with Disabilities Act as a matter of law.

C.    Plaintiff's Claim of Unlawful Interference with ERISA Rights

Paige claims that Milnor terminated him to prevent him from obtaining additional

disability benefits under Milnor's benefit plan and to retaliate against him for having

done so.  The following standards apply to this claim.

> Section 502(a)(1)(B) [29 U.S.C. § 1132(a)(1)(B)] of ERISA states
> that a plan participant or beneficiary may bring a civil action "to recover
> benefits due to him under the terms of his plan, to enforce his rights under
> the terms of the plan, or to clarify his rights to future benefits under the
> terms of the plan."
> Section 502(a)(3) [29 U.S.C. § 1132(a)(3)] states that a civil action
> may be brought:
>> by a participant, beneficiary, or fiduciary (A) to enjoin any act
>> or practice which violates any provision of this subchapter or
>> the terms of the plan, or (B) to obtain other appropriate
>> equitable relief (i) to redress such violations or (ii) to enforce
>> any provisions of this subchapter or the terms of the plan.

<u>Currier v. Entergy Corp. Employee Benefits Comm.</u>, No. 16-2793, 2016 WL 6024531,

at *2 (E.D. La. Oct. 14, 2016) (quoting 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(3)).

Section 510, ERISA's anti-retaliation provision (codified at 29 U.S.C. § 1140),

further provides:

> It shall be unlawful for any person to discharge, fine, suspend, expel,
> discipline, or discriminate against a participant or beneficiary [of an
> employee benefit plan protected by ERISA] <u>for exercising any right to
> which he is entitled under the provisions of an employee benefit plan</u>;
> . . . or for the purpose of interfering with the attainment of any right to
> which such participant may become entitled under the plan . . . .

29 U.S.C. § 1140 (emphasis added).  "Section 502, 29 U.S.C. § 1132, is the remedial

provision for a violation of § 510.  <u>See</u> 29 U.S.C. § 1140 ('The provisions of section

1132 of this title shall be applicable in the enforcement of this section.'")." Goldberg v.

Cushman & Wakefield Nat'l Corp., No. 4:09-CV-700-Y, 2010 WL 3835143, at *3 (N.D.

Tex. Sept. 30, 2010); accord Crain v. Schlumberger Tech. Co., 187 F. Supp. 3d 732, 742

(E.D. La. 2016).

To establish a prima facie case of discriminatory retaliation under ERISA, plaintiff

must prove "'that the employer terminated the plaintiff in retaliation for exercising an

ERISA right or to prevent attainment of benefits to which he would have become entitled

under an employee benefit plan.'" Id. (quoting Parker v. Cooper Tire & Rubber Co., 546

F. App'x 522, 526 (5th Cir. 2014)). A "[p]laintiff can establish a prima facie case of

ERISA retaliation in light of the close proximity between his inquiry regarding short term

disability benefits and his termination." Crain, 187 F. Supp. 3d at 743.

Additionally, an essential element of a claim of retaliation under 29 U.S.C. § 1140

is proof of the employer's "specific discriminatory intent." Id. at 742 (quoting Parker,

546 F. App'x at 526); accord Roberts v. Unitrin Specialty Lines Ins. Co., 405 F. App'x

874, 882 (5th Cir. 2010), overruled in part on other grounds by Nat'l R.R. Passenger

Corp. v. Morgan, 536 U.S. 101, 117 (2002) (as stated in Heath v. Bd. of Supervisors, No.

16-30625, 2017 WL 923408, at *4 & n.4 (5th Cir. Mar. 8, 2017)). "The plaintiff need not

prove that the discriminatory reason was the only reason for discharge, but he must show

that the loss of benefits was more than an incidental loss from his discharge. This

inference of discrimination can be proven by circumstantial evidence." Holtzclaw v.

25

DSC Commc'ns Corp., 255 F.3d 254, 260 (5th Cir. 2001) (citations omitted).

The court applies the same McDonnell Douglas burden-shifting framework to plaintiff's ERISA retaliation claim as it does to his ADA discrimination and retaliation claims. Crain, 187 F.Supp.3d at 742.

Paige alleges that Milnor unlawfully interfered with his right to disability benefits, which he was entitled to receive under Milnor's employee benefit plan, by terminating him while he was on short-term disability leave. Record Doc. No. 1 at ¶¶ 43-46. Milnor argues that because Paige was uncertain of the permanence of his condition and of his ability to return to work at the time of his termination, Milnor could not have known that he would not return to work and would seek long-term benefits. Record Doc. No. 31-1 at p. 25. Defendant also asserts that plaintiff's summary judgment evidence does not support the allegations he made in his complaint and fails to establish defendant's specific intent to retaliate or to interfere with his right to ERISA benefits. Id.

Paige replies without any competent supporting evidence that he was terminated because Milnor did not want to continue to pay his short-term disability benefits and wanted to prevent him from receiving any long-term disability benefits from Milnor's plan. Record Doc. No. 34 at p.18. He also asserts that Milnor interfered with his ability to attain benefits from the Department of Veterans Affairs. Id.

In its reply memorandum, defendant argues that plaintiff confirms in his opposition memorandum that he did not apply for long-term disability benefits and, thus,

lacks a factual basis for his claim that Milnor prevented him from obtaining additional disability benefits. Record Doc. No. 37 at pp. 4-5. Plaintiff states in his opposition memorandum that he did apply for long-term disability, but only from the Department of Veterans Affairs, <u>not</u> Milnor. Record Doc. No. 34 at p. 2. Section 510 of ERISA quoted above is clear that an ERISA retaliation claim is based on an employee's exercise of "any right to which he is entitled under the provisions <u>of an employee benefits plan</u>." 29 U.S.C. § 1140 (emphasis added). Plaintiff's retaliation claim against Milnor cannot rest on his application for benefits from the Department of Veterans Affairs, a third party, not Paige's employer. Thus, Paige's only possible ERISA claim must stem from his alleged right to benefits as a beneficiary or participant under Milnor's employee benefits plan.

Plaintiff was on short-term disability leave from Milnor beginning on August 6, 2015, and he was still on leave when he was terminated in January 2016. Record Doc. No. 34-1 at ¶¶ 14, 74. Plaintiff intimates that his prima facie case of ERISA retaliation may be based on the temporal proximity between his request for short-term disability benefits in August 2015 and his termination in January 2016. However, the Supreme Court has stated that in order for "mere temporal proximity between an employer's knowledge of [a] protected activity and an adverse employment action [to be] sufficient evidence of causality to establish a prima facie case . . . the temporal proximity must be 'very close.'" <u>Clark Cnty. Sch. Dist.</u>, 532 U.S. at 273 (citing <u>O'Neal v. Ferguson Constr.</u>

Co., 237 F.3d 1248, 1253 (10th Cir. 2001)); see also Crain, 187 F.Supp.3d at 743 (applying the temporal proximity standard articulated in Clark Cnty. Sch. Dist. to both FMLA and ERISA retaliation claims).

It is undisputed that Paige requested and received short-term disability benefits for more than five months, so the time between Milnor's knowledge of Paige's benefits request and his termination was not "very close." Raggs, 278 F.3d at 472. Thus, Paige cannot rely on temporal proximity between his request for short-term disability benefits and his termination to establish a prima facie case of retaliation.

As with his retaliation claim under the ADA, Paige has produced only conclusory and speculative statements that defendant terminated him for the purpose of interfering with his right to short-term disability benefits or any speculative future request for long-term benefits under Milnor's employee benefits plan. Record Doc. No. 34 at p.18. It is undisputed that he never requested long-term disability benefits from Milnor. He has presented no evidence that might be sufficient to establish Milnor's specific intent to retaliate against him or to interfere with his ERISA benefits rights. Conclusory statements by the nonmoving party are insufficient to defeat a motion for summary judgment. Chambers, 428 F. App'x at 419 n.54 (citing Am. Eagle Airlines, 343 F.3d at 405). As a result, plaintiff cannot prove a prima facie case of retaliation under ERISA. Accordingly, defendant is entitled to summary judgment on plaintiff's ERISA retaliation claim as a matter of law.

<u>CONCLUSION</u>

For all of the foregoing reasons, IT IS ORDERED that defendant's motion for summary judgment is GRANTED. Plaintiff's claims are therefore DISMISSED WITH PREJUDICE. Judgment will be entered separately, plaintiff to bear all costs of this proceeding. Fed. R. Civ. P. 54(d)(1).

New Orleans, Louisiana, this _____6th_____ day of November, 2017.


JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE